IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:07-CR-46-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CARLOS LEE SIMMONS, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to suppress statements made as a result of questioning or interrogation by law enforcement officers following his arrest on April 19, 2006. (DE # 20.) On September 5, 2007, after holding a hearing on the motion in the previous month, Magistrate Judge James E. Gates filed a Memorandum and Recommendation ("M&R") recommending the denial of the motion to suppress. The defendant timely responded with an objection, and this matter is therefore ripe for adjudication. For the reasons set forth below, the motion to suppress is denied. Motion to continue arraignment scheduled for next week (DE # 41), made because of the pendency of the motion to suppress, is, accordingly, denied.

STATEMENT OF THE CASE

A federal grand jury returned a three-count indictment on April 4, 2007, charging defendant with possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (count I); possession of a firearm after conviction for a crime of domestic violence, 18 U.S.C. § 922(g)(9) (count II); and possession of a firearm with an obliterated serial number, 18 U.S.C. § 922(k) (count III). The alleged

offenses occurred on April 19, 2006.

On July 9, 2007, relying on a case handed down by the Fourth Circuit on April 16, 2007, United States v. Hayes, 482 F.3d 749 (4th Cir. 2007), the defendant moved to dismiss count II, on grounds that the defendant lacked all necessary elements for the predicate offense underlying 18 U.S.C. § 922(g)(9), as required by Hayes. Approximately two weeks later, the government sought leave of the court to dismiss count II, and such leave was granted by the court. Therefore, only counts I and III remain pending.

On October 11, 2007, the court granted a joint motion to continue arraignment and trial, and defendant is currently set for arraignment on December 14, 2007 before the magistrate judge.

## RELEVANT FACTUAL BACKGROUND

The Wilmington Police Department ("WPD") received a domestic disturbance complaint on the evening of April 19, 2006. WPD Officers responded to the call, and while *en route* to Metting Road, the site of the alleged disturbance, the officers received computerized notification that the defendant was at the Metting Road house and armed with a firearm. The officers also learned that defendant had an outstanding arrest warrant resulting from a probation violation. After convening outside the residence to determine the best way in which to approach the armed suspect in a residential setting, the officers approached the residence and there met the defendant's fiancee, who alerted the officers to the fact that defendant was hiding in a closet, and that his weapon, a pistol, lay in a bureau drawer.

While a group of officers proceeded inside the house with plans to approach the closet where the defendant hid, another officer, Parks, stationed at the back door, heard commotion from inside the house, and saw the defendant attempting to flee through the back door of the house. The

2

defendant fled from the house to several different apartment complexes and, in the process, escaped from officer Parks. Parks, however, discerning the general vicinity of defendant's flight, combed the area and eventually was approached by an apartment-dweller reporting that defendant was located in her apartment. A group of officers entered the informant's apartment and noticed scuff marks along a wall leading to the attic. Following this trail, the officers found the defendant and took him into custody without further incident.

With Parks having been instructed by a supervising officer not to ask defendant any "accusatory or interrogatory questions," defendant was placed in a police vehicle and driven to the WPD station. Parks was authorized to ask or to elicit only the limited biographical information necessary to complete the police report.

Handcuffed in the back of the patrol car, the defendant inquired about the nature of the charges which he anticipated would be filed against him. In response, Parks apprised the defendant of the charges. The defendant later confided in Parks that he "was glad the events at issue occurred because he was tired of looking over his shoulder and hiding from the police." (M&R at 4.) The government alleges that defendant then stated that he obtained the firearm at issue for his protection from his fiancee's father, with whom he was not in good relations. Parks testified at the motion hearing that he responded to these inculpatory remarks with one-word exclamations like "really" and "wow." (M&R at 4-5.) Parks did not give Miranda warnings to defendant during the ride.

After the ride to the station defendant was moved to a holding cell. Then defendant was moved to an interview room and sat down before a DVD recorder and the questions of officer Eubanks, a member of the WPD's violent crimes task force. Parks, who by this point was typing up the police report, had briefed Eubanks on the evening's events prior to Eubank's interrogation. The

3

DVD ran for 20 seconds before Eubanks introduced himself, and for 18 seconds more before defendant was Mirandized. During that time, defendant began speaking about events related to his arrest. Officer Eubanks stopped defendant in order to read to him his <u>Miranda</u> rights. The entirety of this procedure lasted almost two (2) minutes. This was the only time defendant received <u>Miranda</u> warnings.

Eubanks relayed the day's events as he understood them through Parks' account, which the defendant confirmed. The defendant then supplemented the account with a history of the events leading up to his fiancee's distress call. Eubanks responded, "I'm believing what you're telling me, but you're leaving some stuff out," and told the defendant that the WPD had recovered a firearm. The defendant then revealed that he had obtained the weapon in question one week prior to his arrest, and that he had run from the WPD because he did not believe the officers would open fire on him. Defendant concluded attesting to his forthrightness in the preceding account.

## DISCUSSION

The Memorandum and Recommendation concludes that the foregoing events do not warrant the suppression of the government's evidence. The defendant presents a number of factual and legal objections to the M&R. For clarity, the court's analysis will be divided into two temporal phases: conduct prior to the interview at WPD station and conduct during the interview at the WPD station. Based on the following analysis, the court accepts the recommendations of the magistrate judge and consequently denies the motion to suppress.

I. Defendant's Allegedly Inculpatory Statements Prior to the Formal Station Interview

The defendant allegedly admitted to Officer Parks that he possessed the gun at issue. The defendant also explained the length of time he possessed the gun and why he had obtained it.

4

Defendant offers two arguments in favor of suppressing these statements. First, the defendant claims he never made the assertions. Second, the defendant argues that, even if the statements were made, the statements resulted from a custodial interrogation undertaken without the prior giving of Miranda warnings.

A. The Existence of the Relevant Statements by Defendant

The magistrate judge conducted a hearing on the motion to suppress that is currently before this court on August 13, 2007, and, based on that hearing, found that defendant's testimony on the issue of possession lacked credibility sufficient to warrant a factual finding in favor of defendant. (M&R at 7.) Moreover, the magistrate judge found that "[t]he evidence that [defendant] made the statements is overwhelming." (Id.) This evidence includes Officer Parks' testimony and police report that he prepared on the night in question; the evidence also includes Officer Eubanks' confirmation of Parks' testimony and an April 21, 2006 police report. Therefore, for the purposes of deciding this motion, the court accepts the magistrate judge's findings that the incriminating statements were in fact made by the defendant as alleged by the government.

B. The Voluntariness of the Defendant's Statements

The Fifth Amendment to the United States Constitution guarantees that "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V. In order to protect this right, the Supreme Court in Miranda v. Arizona adopted prophylactic procedural rules that must be followed during custodial interrogations. See 384 U.S. 436, 444 (1966). Any custodial confession first requires warning the suspect of his rights and obtaining a waiver of those rights before custodial interrogation. See United States v. Mashburn, 406 F.3d 303, 306 (4th Cir. 2005). Specifically, "[p]rior to any questioning, the person must be warned that he has a right to

5

remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 at 444. "Statements made in violation of these rules are generally inadmissible in the prosecution's case-in-chief. See Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam).

Miranda rights apply to custodial interrogation. Rhode Island v. Innis, 446 U.S. 291, 300 (1980). An individual under arrest is in custody. United States v. Leshuk, 65 F.3d 1105, 1108 (4th Cir. 1995). For Miranda purposes, interrogation "refers not only to express questioning, but also to any words or action on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Innis, 446 U.S. at 301. In determining whether indirect questioning constitutes interrogation, "the perceptions of the suspect," not the intent of the police, are paramount. Id. More specifically, "[t]he inquiry mandated by Innis into the perceptions of the suspect is *necessarily contextual*, and whether descriptions of incriminating evidence constitute the functional equivalent of interrogation will depend on circumstances that are too numerous to catalogue." United States v. Payne, 954 F.2d 199, 203 (4th Cir. 1992).

An exception to Miranda's protection has been found by the Fourth Circuit for "routine booking questions 'securing biographical data necessary to complete booking or pretrial services.'" United States v. D'Anjou, 16 F.3d 604, 608 (4th Cir. 1994) (citation omitted). Nor are a defendant's Miranda rights implicated for "volunteered statements of any kind." Miranda, 384 U.S. at 478.

The magistrate judge found that the defendant's statements to Officer Parks were not the result of interrogation by Parks but rather that the statements were made voluntary. Defendant challenges the M&R's conclusion that Officer Parks' interjections and exclamations during his conversation with defendant, such as "wow" and "really," "were merely spontaneous, one-word

6

expressions of Parks' surprise at the disclosures defendant ... [not] 'reasonably likely to elicit an incriminating response from the suspect.'" The defendant responds that, even if officer Parks did not intend his exclamations to serve to elicit responses, the defendant subjectively perceived the exclamations as interrogation, and it is these subjective perceptions which constitute the focus of the courts Miranda analysis.[1] The defendant, however, does not explain how he arrives at this conclusion. In fact, Officer Parks' utterances were substantially less likely to evoke an incriminating response than statements that the Fourth Circuit has found not to be compulsive in nature. See United States v. Payne, 953 F.2d 199, 201 (4th Cir. 1992) (defendant's non-Mirandized statement admitting possession of firearm offered in response to an FBI agent's comment that a weapon was found at defendant's residence upheld); see also United States v. Smith, 215 Fed.Appx. 255, at *3 (4th Cir. Jan. 30, 2007) (unpublished decision) (not suppressing where response was not "directly responsive" to question of police officer).

Additionally, defendant objects to the M&R's conclusion that defendant was not interrogated when Parks and the defendant spoke about the nature of the likely charges. Defendant initiated the discussion by asking about the nature of the charges, and the magistrate judge found that Parks provided defendant with "a matter-of-fact explanation in response." (M&R at 10.) Declaratory statements by an officer concerning the nature of legal charges against a defendant could not reasonably be expected to elicit an incriminating statement and therefore do not constitute interrogation for Miranda's prophylactic purposes. See Payne, 954 F.2d at 202.

---

[1] While it is true that subjective intent is the focus of the analysis, "the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301

7

II. Defendant's Allegedly Inculpatory Statements During the Formal Station Interview

In the course of the interview at the WPD station, the defendant admitted that he possessed the firearm in question and provided details surrounding its acquisition. The defendant seeks to suppress these statements under the theory that his Miranda waiver was invalid because it did not satisfy the basic elements for validity and the statements were procured through an interrogation tactic equivalent to the prohibited "question-first" tactic.

A. Defendant's Waiver of Miranda Rights

A court's "inquiry into whether an individual waived effectuation of the rights conveyed in the Miranda warnings has two distinct dimensions." United States v. Cristobal, 293 F.3d 134, 139-140 (4th Cir. 2002) (citing Edwards v. Arizona, 451 U.S. 477, 482 (1981)). The first dimension is whether or not "the relinquishment of the right [was] voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception." Id. During the hearing, the defendant conceded through counsel that his statements to Officer Eubanks were voluntary and thereby that his Miranda waiver was voluntary. Moreover, the M&R analyzed the issue and determined that "no fact, or set of facts, establishing that defendant's Miranda waiver was coerced." (M&R at 15.) Second, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." In short, a waiver of Miranda rights must be voluntary, knowing, and intelligent. Moran v. Burbine, 475 U.S. 412, 421 (1986). The government has the burden of proving that, under the totality of the circumstances, both elements are satisfied. United States v. Robinson, 404 F.3d 850, 860 (4th Cir. 2005).

The M&R determined that both elements were satisfied. The defendant's objection to the

M&R asserts that the M&R does apply the totality of the circumstances analysis to the question of whether the waiver was knowing and intelligent. In support of this position, defendant puts forth five factors, which he argues demonstrate that he did not make a knowing and intelligent waiver of his <u>Miranda</u> rights.[2] Defendant's objection concedes that the M&R did take into account "some factors relating to the circumstances of the waiver – such as Mr. Simmons' intelligence, education, age, and familiarity with the legal system, and the fact that Mr. Simmons was under the influence of his recent cocaine use," but argues that the five factors tilt the totality of the circumstances analysis in favor of the conclusion that the waiver was neither knowing nor intelligent. (Obj. at 5.)

To determine whether a defendant's waiver was knowing and intelligent, the court analyzes "the suspect's intelligence and education, age and familiarity with the criminal justice system, [and] the proximity of the waiver to the giving of the <u>Miranda</u> warnings." <u>Correll v. Thompson</u>, 63 F.3d 1279, 1288 (4th Cir. 1995) (citations omitted). When the defendant claims mental impairment resulting from the use of drugs or alcohol, courts "appl[y] a test of coherence, of an understanding of what is happening in determining the validity of waivers. . . ." <u>Moore v. Ballone</u>, 658 F.2d 218, 229 (4th Cir. 1981).

The M&R found that the defendant possessed the basic intellectual capacity and knowledge to grasp the concept of a <u>Miranda</u> waiver. The 22-year old defendant was literate, had completed the 10th grade, and was employed as a brick mason. Having been arrested four times, two of those being felony arrests, the defendant had knowledge of the criminal justice system. Both officers

---

[2]The alleged five factors are: (1) defendant was not permitted to make a telephone call when he arrived at the police station; (2) defendant remained handcuffed during the interrogation; (3) the interrogation room had no window; (4) officer Eubanks began his interview by telling defendant that this was time for defendant to help himself; and (5) officer Eubanks was leading in the manner in which he obtained defendant's signature

9

testified that defendant, who was "coming down from a high," "appeared normal and lucid at the time of his arrest and at the time of his interview." (M&R at 17.) The defendant answered questions with detailed responses and had the ability to recall specific facts. The defendant at one point corrected Officer Eubanks. Thus, the M&R found defendant to be coherent and possess understanding for Miranda purposes. The five factors presented by the defendant do not go to the issues of knowledge or intelligence, and therefore do not alter the analysis contained in the Memorandum and Recommendation.

B. The Defendant's Waiver under Mashburn

The defendant argues that his statements ought to be suppressed because they "came on the heels" of illegitimately elicited un-Mirandized statements. See United States v. Mashburn, 406 F.3d 303 (4th Cir. 2005). This argument is inapposite in the current context. The Mashburn case, which considered the use of "question-first" tactics, which involve withholding Miranda warnings until obtaining a confession, is inapposite where pre-Miranda statements by the defendant were not the product of any interrogation.

CONCLUSION

For the foregoing reasons, the court adopts the recommendations of Magistrate Judge James E. Gates. Accordingly, the defendant's motion to suppress evidence (DE # 20) is DENIED. The pending motion to continue arraignment (DE # 41) also is DENIED.

SO ORDERED, this the 4th day of December, 2007.

LOUISE W. FLANAGAN
Chief United States District Judge

10